1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LARRY JOHN FARRIS, III,

11              Petitioner,                    No. CIV S-04-1758 GEB KJM P

12        vs.

13   SCOTT KERNAN,

14              Respondent.               ORDER

15   _____/

16   I.  Background

17              On July 20, 2001, police executed a search warrant at petitioner's apartment,

18   looking for evidence of the robbery of a smoke shop.  Lodged Doument (Lodg. Doc.) 9 at 17-19.

19        After waiving his Miranda rights, petitioner admitted he had robbed a drug dealer in July,

20   along with Forman and Scott Planer and that he, Forman, and Joshua Merritt committed the

21   robbery of the Millenium[1] smoke shop.  Id. at 21-22.

22              On August 31, 2001, a first amended complaint was filed in Placer County

23   Superior Court, charging petitioner and Forman with conspiracy to commit robbery, three counts

24   of second degree robbery and three counts of false imprisonment by violence, all stemming from

25   _____

26        [1]  This is the spelling used in the reward poster promulgated by the owner of the smoke
     shop.  Lodg. Doc. 17.

1

the Millenium Smoke Shop robbery.  The complaint also charged petitioner and Forman with conspiracy to commit robbery, second degree robbery, false imprisonment by violence and receiving stolen property, all arising from the robbery of drug dealer Mark Reynolds.  Finally, it was alleged that petitioner personally used a gun in connection with several of the counts and that a principal in the offenses was armed with a firearm.  Lodg. Doc. 10.

Kevin Burdick was appointed to represent petitioner.  He met with petitioner and his mother on a couple of occasions and told them the prosecution had extended a plea offer with a sentence of fourteen years.  Pet., Ex. 8 (Pet'r's Decl.) ¶ 5.  Burdick counseled petitioner to accept the offer and said he did not want to do anything to anger the prosecutor.  Id.  Burdick also told him the case was hopeless and petitioner "had to accept whatever offer they made."  Id. ¶ 9.

On October 12, 2001, petitioner told the court he wanted new counsel, so the court held a Marsden hearing.[2]  Petitioner told the court he had problems getting in touch with Burdick and that Burdick had not provided him copies of the discovery in a prompt fashion.  Pet., Ex. 7 at 5-6.  Burdick responded:

> I have talked to him about issues with – relating to his, his
> statements and what motions we might bring and might not bring;
> however, I have not taken any action at this time basically because I
> was waiting to see whether the case would settle fairly quickly in a
> favorable basis and what was going to happen with his federal
> charges and how that might impact this case. . . . .

Id. at 7.

 According to petitioner, Burdick never advised him of the possibility of filing a motion to suppress.  Pet., Ex. 8 ¶ 2.

Burdick was involved in conversations with Deputy District Attorneys David Tellman and Estelle Tansey.  Lodg. Docs. 14 ¶ 6 & 15 ¶ 5 (Tellman and Tansey Declarations).  Tellman believed defendant faced at least twenty-five years in prison, but offered Burdick a plea

---

[2]  People v. Marsden, 2 Cal.3d 118 (1970).

1  agreement that would result in a fourteen year sentence.  Lodg. Doc. 14 ¶¶ 7-8.  Had Burdick

2  filed a motion to suppress, Tellman and Tansey would have withdrawn the offer and would not

3  have left the offer open while Burdick pursued a motion to suppress.  Lodg. Doc. 14 ¶¶ 10, 11;

4  Lodg. Doc. 15 ¶¶ 7-8.

5  　　　　　Burdick advised petitioner to accept the fourteen year offer because of the strength

6  of the evidence, which included petitioner's confession and the confession of crime partner

7  Joshua Merritt.  Lodg. Doc. 16 ¶ 3 (Burdick Declaration).  Burdick avers:

8  　　　　　As part of my representation of Mr. Farris, I recommended to him
   　　　　　that he accept the fourteen-year state prison offer ("the offer") that
9  　　　　　would become the final plea bargain resolving this case.  I based
   　　　　　this recommendation, in part, on the following things I believed at
10 　　　　　the time to be true: the evidence against Mr. Farris was very strong,
   　　　　　including Mr. Farris' own confession and the confession of Joshua
11 　　　　　Merritt; Mr. Farris faced at least twenty-five years in state prison as
   　　　　　a possible exposure; and, a suppression motion challenging the
12 　　　　　search warrant would likely fail.

13 　　　　　. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

14 　　　　　I explained to Mr. Farris my beliefs . . . .  He appeared to understand
   　　　　　my opinion and he agreed with my assessment.  I fully believed that
15 　　　　　he was in favor of accepting the offer.

16 　　　　　. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

17 　　　　　In my experience practicing law in Placer County, early offers by
   　　　　　the prosecution such as this are not typically held open while the
18 　　　　　defense pursues pretrial motions.

19 Id. ¶¶ 3-5, 9.

20 　　　　　On February 19, 2002, petitioner entered a plea of guilty to one count of robbery

21 arising from the Millenium Smoke Shop incident and one count of robbery of Mark Reynolds and

22 admitted he personally used a firearm in connection with the Millenium robbery in exchange for a

23 stipulated sentence of fourteen years.  Lodg. Docs. 3 (plea form) & 11 at 5-6 (transcript of entry

24 of plea).  He was sentenced to a term of fourteen years on April 19, 2002.  Lodg. Doc. 1.

25 　　　　　Petitioner did not appeal his conviction.  However, on June 28, 2003, he filed a

26 petition for a writ of habeas corpus in the Placer County Superior Court, raising a claim of

ineffective assistance of counsel.  Lodg. Doc. 5.  Though the petition was prepared by counsel, it used the California Judicial Council form and told the "story briefly without citing cases or law," as the form instructed.  Counsel did attach a short memorandum of points and authorities, but provided no supporting documentation or exhibits.  Id.  The Superior Court denied the petition because petitioner had "wholly failed to present any evidence that the results of his case would be any different" had counsel acted differently.  Pet., Ex. 1.

Petitioner next filed a petition in the Court of Appeal for the Third Appellate District, again through counsel.  This petition was supported by twelve exhibits and by petitioner's declaration.  Although neither party has submitted the exhibits, they are described in the body of the petition lodged by respondent:

- Ex. A–the first amended felony complaint;

- Ex. B–the transcript of the change of plea;

- Ex. C–the sentencing transcript;

- Ex. D–the search warrant and affidavit;

- Ex. E–police report dated 6-30-01;

- Ex. F–police report dated 6-24-01;

- Ex. G–police report dated 7-18-01;

- Ex. H–portion of a police report dated 7-23-01;

- Ex. I–letter from attorney Druliner to attorney Burdick;[3]

- Ex. J–materials related to the Marsden proceedings;

- Ex. K–letter from trial counsel asserting privilege; and

- Ex. L–superior court order.

See Lodg. Doc. 6 at 2-3.  In his declaration attached to the Court of Appeal petition, petitioner avers, inter alia, that attorney Burdick never advised him "regarding the requirements for warrants

---

[3] Attorney Druliner had been retained to represent petitioner on federal charges; petitioner and his mother consulted her for a second opinion on the state case.

or the feasibility of contesting the evidence in my case, whether by suppression or an in limine

motion." Id. at 14.  He also says,

> There is no issue regarding privilege keeping Mr. Burdick from
> discussing this case with Mr. O'Neill.[4]  I understand that the
> privilege is mine, and the fact that I am claiming ineffective
> assistance of counsel, waives the privilege.  Mr. Burdick has
> steadfastly refused to talk about this case with my other lawyer, Ms.
> Druliner, my mother, my current attorney and even me.  I am
> informed and believe that asserting privilege at this stage of the
> proceedings is specious and obstructionist and without legal merit.

Id. at 14-15.  In the prayer for relief, petitioner asked the court to issue an order to show case and

"[a]fter a full hearing, issue the writ vacating the judgment of conviction with instructions to

suppress all evidence obtained as a result of the illegal search."  Id. at 7.

The Court of Appeal denied the petition in a single-line order.  Pet., Ex. 2.

State habeas counsel then filed a petition for review in the California Supreme

Court, which was denied, again in a one line order, after the court had requested an informal

response from the Attorney General's office.  Lodg. Doc. 7 (Petition for Review); Pet., Exs. 9

(informal response) & 3 (Supreme Court denial).

II.  Analysis

Respondent argues that petitioner has not made a sufficient showing to justify an

evidentiary hearing because he has neither requested an evidentiary hearing nor made a proffer of

the evidence he intends to introduce at a hearing.  He also argues that counsel's subjective reasons

for acting as he did are not relevant to a claim of ineffective assistance of counsel and that

petitioner did not demonstrate diligence below because he did not offer this testimony in state

court.  Finally, he suggests that petitioner has forfeited his right to ask for such a hearing by

failing to file a formal motion.

/////

---

[4]  Mr. O'Neill was petitioner's habeas counsel.

A.  Forfeiture

At the end of the memorandum of points and authorities filed in support of his original petition, petitioner asked the court to "conduct an evidentiary hearing."  See Docket No. 3 at 35.  The amended petition, filed after the resolution of the motion to dismiss, incorporated these points and authorities by reference.  Docket No. 25 at 4.

Without citing any specific authority, respondent argues that petitioner must make a proffer of the evidence he proposes to present at the evidentiary hearing so that it will be possible to determine whether petitioner offered that evidence to the state court.  Opp'n at 6. Even if petitioner must make a proffer, a proposition the court does not endorse, the court finds this requirement was satisfied by the Court of Appeal petition, as discussed more fully below. Moreover, if there must be a proffer, the court finds that respondent has in essence waived the issue by presenting trial counsel Burdick's declaration in support of the answer to the petition. Respondent himself has demonstrated what trial counsel might say at the proposed evidentiary hearing.  Lodg. Doc. 16.

B.  Relevance

This argument is particularly puzzling in light of respondent's submission of trial counsel's declaration, describing his subjective reasons for urging petitioner to plead guilty. Lodg. Doc. 16 ¶¶ 3, 10-12.  The relevance argument also has been waived by respondent's submission of the declaration.  See Phillips v. Woodford, 267 F.3d 966, 977, 988 (9th Cir. 2001) (remanding for evidentiary hearing when counsel "had never been called upon to testify under oath regarding his contradictory statements" about his decision to pursue a particular defense); People v. Pope, 23 Cal.3d 412, 426 (1979) ("Where the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus.  In habeas corpus proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to

1   act in the manner complained of.").[5]

2          C.  Diligence In State Court

3          The Antiterrorism and Effective Death Penalty Act (AEDPA) provides, in

4   pertinent part:

5              If the applicant has failed to develop the factual basis of a claim in
              State court proceedings, the court shall not hold an evidentiary
6              hearing on the claim unless the applicant shows that –

7                  (A) the claim relies on –

8                      (i) a new rule of constitutional law, made
                      retroactive to cases on collateral review by the
9                      Supreme Court, that was previously unavailable; or

10                     (ii) a factual predicate that could not have been
                      previously discovered through the exercise of due
11                     diligence; and

12                 (B)   the facts underlying the claim would be
                  sufficient to establish by clear and convincing
13                 evidence that but for constitutional error, no
                  reasonable factfinder would have found the applicant
14                 guilty of the underlying offense.

15   28 U.S.C. § 2254(e)(2).

16          At this stage of consideration of the instant petition, the court is required to

17   "determine whether a factual basis exists in the record to support the petitioner's claim." Baja v.

18   /////

19   /////

20   /////

21   /////

22   /////

23   /////

24   /////

25

26          [5]  Pope's abrogation on other grounds is recognized in People v. Berryman, 6 Cal.4th
     1048, 1081 n.10 (1993).

1    Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).  If the facts do not exist or are inadequate and a

2    hearing might be appropriate, then

> [the] court's first task in determining whether to grant an
> evidentiary hearing is to ascertain whether the petitioner has 'failed
> to develop the factual basis of a claim in State court.'  If so, the
> court must deny a hearing unless the applicant establishes one of
> the two narrow exceptions set forth in §2254(e)(2)(A) & (B).  If, on
> the other hand, the applicant has not 'failed to develop' the facts in
> state court, the district court may proceed to consider whether a
> hearing is appropriate, or required under Townsend.[6]

8    Id.  In this case, the court has determined that a hearing is appropriate to develop more completely

9    the factual basis of petitioner's claim of ineffective assistance of counsel.  It now must consider

10   whether petitioner failed to develop the record below.

11          A petitioner will be charged with a "failure to develop" the facts if "there is lack of

12   diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  Williams

13   v. Taylor, 529 U.S. 420, 432 (2000).  The petitioner must have "made a reasonable attempt, in

14   light of the information available at the time, to investigate and pursue claims in state

15   court."  Id. at 435; Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005).  "Diligence

16   will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in the

17   state court in the manner prescribed by state law."  Williams, 529 U.S. at 437.

18   /////

19   /////

20   /////

---

22          [6] Townsend v. Sain, 372 U.S. 293 (1963).  In Townsend, the court listed several factors
to be considered to determine whether to hold an evidentiary hearing.  These are "(1) the merits
23   of the factual dispute were not resolved in the state hearing; (2) the state factual determination is
not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the
24   state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation
of newly discovered evidence; (5) the material facts were not adequately developed at the state-
25   court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas
applicant a full and fair fact hearing."  372 U.S. at 313.  The fifth factor was overruled in Keeney
26   v. Tamayo-Reyes, 504 U.S. 1 (1992).

1    The California Supreme Court has established pleading requirements for state

2  habeas petitions:

> The petition should both (i) state fully and with particularity the
> facts on which relief is sought, as well as (ii) include copies of
> reasonably available documentary evidence supporting the claim,
> including pertinent portions of trial transcripts and affidavits or
> declarations. Conclusory allegations made without any explanation
> of the basis for the allegations do not warrant relief, let alone an
> evidentiary hearing.

7  People v. Duvall, 9 Cal.4th 464, 474 (1995) (citations omitted).  If the petition recites "specific

8  facts . . .  and thereby [makes] a threshold showing of ineffective assistance that is material and

9  sufficiently adequate," Rose v. Superior Court, 81 Cal.App.4th 564, 573 (2000), the court will

10  direct the custodian to show cause why the relief requested should not be granted.  Id. at 574.

11  Once this response, called a return, is filed, the petitioner may file a traverse, controverting the

12  facts alleged in the traverse.  People v. Romero, 8 Cal.4th 728, 739 (1995).  "Once the issues have

13  been joined in this way, the court must determine whether an evidentiary hearing is needed."  Id.

14  If it appears that "petitioner's entitlement to relief hinges on the resolution of factual disputes,

15  then the court should order an evidentiary hearing.  (Pen. Code, § 1484.)"  Id. at 739-40; see also

16  Duvall, 9 Cal.4th at 477.

17  /////

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

1    The Ninth Circuit has recognized that the decision whether to hold an evidentiary

2  hearing in state habeas proceedings is not made until a return has been directed and a traverse

3  filed, and has noted that:

> Ordinarily diligence requires that a petitioner seek an evidentiary
> hearing in state court in the manner prescribed by state law.  Under
> California law, an appellate court, when presented with a state
> habeas petition, determines whether an evidentiary hearing is
> warranted only after the parties file formal pleadings, if they are
> ordered to do so.  Here, the California Supreme Court summarily
> denied Horton's state habeas petition without ordering formal
> pleadings.  Because Horton never reached the stage of the
> proceedings at which an evidentiary hearing should be requested, he
> has not shown a "lack of diligence at the relevant stages of the state
> court proceedings" and therefore is not subject to AEDPA's
> restrictions on evidentiary hearings.

11  Horton v. Mayle, 408 F.3d 570, 582 n.6 (9th Cir. 2005) (internal citations omitted).  In this case

12  as well, the case never reached the stage where an evidentiary hearing "should be requested."

13  There is no lack of diligence.

14    This conclusion is buttressed by the actual petition filed in the Court of Appeal[7]

15  and by state law.  Petitioner's state habeas counsel presented petitioner's declaration, in which he

16  averred that trial counsel never discussed the feasibility of pursuing a motion to suppress and

17  what consequences, if any, that might have on his ability to negotiate a favorable disposition to

18  the case.  He also presented the search warrant affidavit, showing that it was based on several

19  layers of hearsay.  Finally, it appears he presented a letter from trial counsel, refusing to address

20  the matters at hand because of attorney-client privilege.  As noted above, neither party has

21  presented the exhibits filed in the Court of Appeal, but the contents of the letter may be divined

22  from petitioner's declaration, waiving any privilege and labelling Burdick's refusal to respond to

23  inquiries as "obstructionist."  Lodg. Doc. 6 at 14-15.  This does not show a lack of diligence.

24  _____

25    [7] The Court of Appeal has original jurisdiction over a habeas petition.  Cal. Const. Art.
VI, § 10.  Had it issued an order to show cause, it could have directed the return to be filed in the
26  superior court, which would have conducted any evidentiary hearing found to be necessary.
People v. Romero, 8 Cal.4th at 740.

1    The California Supreme Court has recognized that both parties in state habeas

2 proceedings have burdens of pleading facts in support of or opposition to the claim for relief.

3 Duvall, 9 Cal.4th at 483. It has further recognized the difficulty a party might face when certain

4 facts are difficult to obtain: "[I]t may be impossible to obtain and allege facts . . . , especially if

5 counsel refuses to speak to respondent . . . ." Id. at 484. The court noted that when information is

6 not available to the respondent, the return should explain why the information is not available and

7 what respondent has done in an attempt to obtain it; for example, respondent could allege that

8 trial counsel refused to talk to an investigator. Id. at 485.

9    In this case, habeas counsel provided similar information: he provided a letter from

10 trial counsel asserting the attorney client privilege as a reason for his refusal to provide

11 information in support of the habeas petition. Lodg. Doc. 6 at 3. Accordingly, in the petition

12 filed in the Court of Appeal, petitioner satisfied his burden of showing why certain facts were not

13 available to him. That he complied with state law shows his diligence. Accordingly, the court

14 confirms the date of November 13, 2007 for the evidentiary hearing.

15 III.  The Hearing

16    A.  Witnesses

17    On or before fourteen days prior to the hearing, the parties shall provide witness

18 lists to opposing counsel.

19    Each party may call any witnesses designated by the other.

20    1.  No other witness will be permitted to testify unless:

21       a .  The party offering the witness demonstrates that the witness is

22       for the purpose of rebutting evidence which could not be reasonably

23       anticipated prior to the evidentiary hearing, or

24       b.  The witness was discovered after the exchange of witnesses and

25       the proffering party makes the showing required in paragraph A2

26       below.

1    2.  Within the fourteen day period prior to the evidentiary hearing, a party shall

2  promptly inform the court and opposing parties of the existence of the unlisted witnesses so the

3  court may consider at the evidentiary hearing whether the witnesses shall be permitted to testify.

4  The witnesses will not be permitted to do so unless:

5          a.  The witnesses could not reasonably have been discovered prior to the

6              exchange of witness lists;

7          b.  The court and the opposing party were promptly notified upon

8              discovery of the witnesses;

9          c.  If time permitted, the party proffered the witnesses for deposition; or

10          d.  If time did not permit, a reasonable summary of the witnesses'

11              testimony was provided to the opposing party.

12      B.  Exhibits, Schedules and Summaries

13          Both parties shall exchange copies of their exhibits fourteen days prior to the

14  evidentiary hearing.  Any objections to the exhibits may be raised at the hearing.

15          Petitioner will use numbers to mark exhibits; respondent will use letters.

16          1.  No other exhibits will be permitted to be introduced unless:

17          a.  The party proffering the exhibit demonstrates that the exhibit is for the

18              purpose of rebutting evidence which could not have been reasonably

19              anticipated; or

20          b.  The exhibit was discovered after the exchange of exhibits and

21              the proffering party makes the showing required in paragraph B2

22              below.

23  /////

24  /////

25  /////

26  /////

2.  Within the fourteen day period prior to the evidentiary hearing, a party shall promptly inform the court and opposing parties of the existence of such exhibits so the court may consider their admissibility at the evidentiary hearing.  The exhibits will not be permitted unless:

a.  The exhibits could not reasonably have been discovered prior to the exchange of exhibits;

b.  The court and the opposing party were promptly informed of their existence; or

c.  The proffering party forwarded a copy of the exhibit(s) (if physically possible) to the opposing party.  If the exhibit(s) cannot be copied the proffering party must show that he made the exhibit(s) reasonably available for inspection by the opposing party.

The parties are directed to bring an "exhibit book" containing copies of their exhibits to the evidentiary hearing for use by the court during the hearing.

C.  <u>Miscellaneous</u>

Petitioner's counsel has already filed the writ of habeas corpus ad testificandum to secure petitioner's presence for the hearing.  He is directed to monitor execution of this writ to ensure that petitioner is brought to court.  The parties shall otherwise make their own arrangements for the attendance of non-incarcerated witnesses.

IT IS HEREBY ORDERED that the evidentiary hearing scheduled for Monday, November 13, 2007 at 10:00 a.m. in Courtroom 26 shall proceed as scheduled.

DATED:  October 17, 2007.

_____
U.S. MAGISTRATE JUDGE

2/farr1758.gh

13